UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
VITO SAVINO and SAVINO, INC.,                             :
                                                          :
                    Plaintiffs,                           :        11-cv-483 (NSR)
        -against-                                         :
                                                          :        OPINION AND ORDER
TOWN OF SOUTHEAST and CHARLES                             :
TESSMER, CODE ENFORCEMENT OFFICER,                        :
TOWN OF SOUTHEAST, sued in his individual                 :
capacity,                                                 :
                    Defendants.                           :
----------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

   Plaintiffs Vito Savino and Savino, Inc. commenced the instant action pursuant to 42

U.S.C. § 1983 against the Town of Southeast ("Town") and Charles Tessmer ("Tessmer"), a

former town zoning code enforcement officer, seeking monetary damages for violating

Plaintiffs' Fourteenth Amendment right to equal protection under the law.  In their amended

complaint, Plaintiffs allege that Defendants discriminatorily applied the facially neutral zoning

laws on the basis of Savino's national origin, and alternatively that Defendants selectively

enforced the zoning laws against Plaintiffs.  Plaintiffs' state law malicious prosecution claim,

also asserted in the amended complaint, has been withdrawn.

   Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary

judgment, asserting there is no genuine dispute of material fact and Defendants are entitled to

judgment on Plaintiffs' selective enforcement claim as a matter of law.  Defendants aver that

Plaintiffs were not selectively treated compared with similarly situated property owners, that

Plaintiffs cannot demonstrate impermissible considerations for selective treatment, and that

Defendant Tessmer is entitled to qualified immunity.  For the following reasons, Defendants'

motion for summary judgment is denied.

## I. THE FACTS

The facts are gleaned from the parties' 56.1 statements, affidavits, and exhibits submitted with this motion, and are not in dispute except where noted.

Plaintiff Vito Savino was born in Italy in 1946. Since 1974 he has lived in the Town with his wife, Gloria. Plaintiff Savino, Inc., a New York corporation formed in 1985 and currently owned by Vito Savino's four children, owns commercial real property located at 1011 Route 22, Brewster, New York (the "Property") and within the Town of Southeast. Neither party provides a history of ownership for Savino, Inc. The Property is in a prominent location in the Town, being near the junction of major highways. The Property is currently leased to an unrelated third party.

Defendant Town of Southeast is a municipal corporation located in the County of Putnam. Defendant Tessmer has lived in the Town since August of 1986. Since that time Tessmer has driven by the Property about seven or eight times per week. Tessmer was a member of the Town Planning Board from 1988 until September or October of 2006, and the Town's Zoning Enforcement Officer from October 2006 until December 2010. Tessmer's wife of 43 years is of Italian national origin.

Savino claims that in 1975 he purchased a towing business operating on the Property, but Defendants insist non-party Savino Towing, Inc. was the purchaser. The towing business was operated by Savino Towing, Inc. Incident to the towing business, Savino claims he would store and sell vehicles on site. Savino asserts that in 1983 he purchased the Property, upon which was already built gasoline pumps and a car repair facility with two service bays. Defendants dispute that Savino purchased the Property instead of Savino, Inc. (which was formed two years later),

2

and assert that Savino has no ownership interest in Savino, Inc., though they point to nothing in the record showing Savino was not previously a shareholder of Savino, Inc.  Since at least the 1960s and up until 1991, the Property was used as a gas station, to repair and sell vehicles, for towing, and to store vehicles incident to the towing and sales.  At some point, Savino, Inc. began renting U-Haul trucks on site.

In 1991, Savino, Inc. sought approval from the Town Planning Board to convert the service bays into a convenience store.  In addition to parking spaces for convenience store customers, the Site Plan specified parking spaces for the U-Haul trucks and outside storage of a dumpster.  For the U-Haul trucks and dumpster, the Planning Board determined that Plaintiffs would need a variance from the Town Zoning Board.  Plaintiffs' revised Statement of Use acknowledged that the proposed convenience store would sell basic consumer goods, delicatessen foods, and gasoline from the existing pumps; that the gasoline sales would require a special permit; and that parking the U-Haul trucks would require a variance.  The Statement of Use did not mention towing or storage and sales of cars on the Property.  According to the transcript of a Zoning Board meeting, Plaintiffs' engineer represented that there would be no towing business, while Savino mentioned that his towing had been effectively put out of business by the change in ownership of Interstate 84.  However, Savino testified at his deposition that he only meant he was ceasing his heavy duty towing business and that he continued towing cars and selling them on the Property.  On September 28, 1992, the Town Zoning Board approved the Site Plan.  Defendants contend that Savino, Inc. abandoned the Property's pre-existing uses of towing, car storage, and car sales by not including them in the Site Plan.  On May 14, 1993, upon completion of the construction project to convert the service bays into the convenience store, the Town's building inspector issued a Certificate of Occupancy and Compliance allowing

3

occupation of the building and its use as a convenience store.  Defendants argue that this

Certificate of Occupancy identifies the use of the Property in its entirety.

From 1993 through 2005, non-party Savino Towing, Inc. operated the convenience store.

In 2000, Plaintiffs ceased renting U-Haul trucks because Savino needed more space on the

Property for his activities.  On November 1, 2005, Savino Towing, Inc. leased the convenience

store to non-party Prestige Petroleum, which currently operates the store and gas pumps under a

25-year lease.  The lease agreement does not reserve any part of the Property for use by Savino

Towing, Inc. or Plaintiffs.  Plaintiffs removed all their records from the Property.  After leasing

the property, the parties dispute whether Plaintiffs' and Savino Towing, Inc.'s income was solely

from leasing the Property to Prestige or also included towing and car sales through early 2008,

when Savino says he ceased those uses after Defendants began citing him for zoning code

violations.  Defendants provide quarterly state and local tax filings by non-party Savino Towing,

Inc. showing no income from December 2006 through November 2007, March 2008 through

May 2011, and December 2011 through November 2012.

In December 2007, Tessmer in his capacity as Zoning Enforcement Officer claims he

noticed that Savino, Inc. had unlicensed and unregistered vehicles stored on the Property,

including one with a "for sale" sign.  Tessmer asserts that he reviewed the Planning Board and

Building Department files concerning the Property and saw the 1992 Site Plan approval of uses

for gasoline sales, the convenience store, and U-Haul rental truck parking.  On December 27,

2007, Tessmer issued Savino, Inc. a courtesy warning advising that the unregistered vehicles

were parked on the Property in violation of Zoning Code § 138-13(E) and that failure to cure

could result in formal enforcement action.  On January 22, 2008, as the vehicles had not been

removed, Tessmer issued Savino, Inc. an information alleging a violation of § 138-13(E), which

4

prohibits "outside storage of inoperative, unlicensed and/or unregistered automotive vehicles." On the same day, Tessmer issued another information alleging a violation of § 138-58(E)(1), which prohibits "car, truck or trailer rentals or sales" at service stations.  At the time, Savino admitted there were inoperative, unlicensed and/or unregistered vehicles and vehicles for sale parked on the Property.

Plaintiffs did not remove the vehicles in question after receiving the January 22 informations.  Subsequently, on or about February 19, 2008, Tessmer issued a third information alleging a continuing violation of § 138-13(E).  On March 13, 2008, Tessmer issued a fourth information alleging a continuing violation of § 138-13(E).  Savino admitted that the inoperative, unlicensed and/or unregistered vehicles remained on the Property.

On May 12, 2008, upon seeing a car-towing trailer on the Property, Tessmer issued a fifth information, this time alleging a violation of § 138-13(C), which prohibits "[t]he placement or use of a trailer or shipping container . . . unless . . . used as a temporary office or storage facility in connection with an ongoing construction project."  At the time, Savino admitted that the trailer in question was parked on the Property.

A court proceeding in the Town of Southeast ensued.  Savino, Inc. moved pretrial to dismiss the informations because, *inter alia*, under CPL § 170.30(1)(f) there were legal impediments to conviction: namely, proof of registration and insurance, and a pre-existing nonconforming use of the Property for towing, car sales, and car storage.  However, because the registration card was missing information, and because there were issues of fact concerning the pre-existing uses, the Town Court denied Savino, Inc.'s motion on February 23, 2009.

A bench trial commenced on November 9, 2009.  After the Town rested its case that day, Savino, Inc. again moved for dismissal.  Savino, Inc. argued that under CPL § 290.10 the Town's

evidence was legally insufficient and that under CPL § 170.30(1)(f) the Town failed to disprove the pre-existing use defense beyond a reasonable doubt.  On April 8, 2010, the Town Court partially granted the motion.  As to the legal sufficiency argument, the Town Court dismissed the fourth information (second continuing violation), because there was no evidence presented as to a violation after February 2008, and the fifth information (trailer storage), because the trailer in question did not fit the definition of "trailer" in the Town Zoning Code.  As to the pre-existing use argument, the Town Court noted that it was Savino, Inc.'s burden to prove the defense by a preponderance of the evidence and found that, based solely on the cross-examination of Tessmer, Savino, Inc. had not yet proven pre-existing use.

On May 12, 2010, during the pendency of the bench trial, Tessmer issued Savino, Inc. two informations for having an RV stored on the Property.  The remainder of the bench trial occurred June 8 and 9, 2010.  On July 16, 2010, the Town Court found Savino, Inc. "not guilty" of the three original informations.  The Town Court subsequently dismissed the May 12, 2010, informations concerning the RV.

According to Plaintiffs, in late 2009 during the pendency of the Town Court proceeding, Tessmer appeared on the Property to serve Savino a cease and desist order to prevent Plaintiffs' tenant from installing a sign for which Tessmer claimed Savino did not have a permit.  Savino claimed he did have a permit.  After some discussion Tessmer became agitated, handed Savino the order and told Savino, "You Guineas think you can get away with anything."  Defendants argue that Savino and his friend, Rosario Benfari, understood Tessmer to be joking, based on Savino's deposition testimony.  Savino testified that at first he and Benfari thought Tessmer was joking, but then realized it was not a joke.  Benfari testified that he witnessed the exchange and was offended by the comment, but felt it was not his place to object.

6

In Tessmer's version of the story, however, Tessmer came to the property that day to serve a notice of violation or stop work order upon Plaintiffs' tenant Premier Petroleum. Tessmer testified that he searched building permit files under Savino's name and found no permit for the sign the tenant was erecting. When Tessmer entered the convenience store, Savino asked why he was there, and Tessmer answered that there was no permit for the sign being erected. The tenant then showed Tessmer a posted permit and Tessmer took his letter back, apologized, and left. He categorically denies making the derogatory statement.

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint on January 24, 2011, alleging a violation of equal protection and a malicious prosecution claim, both under 42 U.S.C. § 1983. Plaintiffs complained of Tessmer's issuance of the first three informations for on-site vehicle sales and storage and of the fifth information for trailer storage. Judge Kenneth M. Karas, then presiding over this case, allowed Plaintiffs to amend the complaint, at which time they replaced the § 1983 malicious prosecution claim with a state law malicious prosecution claim.

Defendants moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. In response, Plaintiffs withdrew their state law claim. On January 6, 2012, Judge Karas held oral argument concerning the equal protection claim and denied the motion to dismiss "for the reasons discussed at the oral argument."[1] Specifically, whereas Defendants argued that the complaint attempted to present exclusively a selective enforcement equal protection claim—because, purportedly, cases involving the enforcement of zoning violations all require plaintiffs to show similarly situated properties—Judge Karas held that the amended complaint stated a claim both for selective enforcement of the zoning laws compared to

_____

[1] Plaintiffs provide the complete transcript of the oral argument.

similarly situated property owners and for the discriminatory application of facially neutral laws

based on direct evidence under *Pyke v. Cuomo*, 258 F.3d 107 (2d Cir. 2001).  For this second

theory, Judge Karas stated, "a plaintiff who alleges that a facially neutral law or policy has been

applied in an intentionally discriminatory race-based manner need not show a better-treated

similarly situated group of individuals of a different race," and "plaintiffs only have to show that

racial animus or animus based on national origin is only a part of the reason why these

[informations] were issued."

## III. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

Procedure.  The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or
> the part of each claim or defense—on which summary judgment is sought.  The
> court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law.

Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of

any genuine dispute or issue[2] of material fact by pointing to evidence in the record, "including

depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which

it believes demonstrate[s] the absence of a genuine issue of material fact,"  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has fulfilled its preliminary burden,

the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.

Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A

genuine dispute of material fact exists when "the evidence is such that a reasonable jury could

---

[2] The 2010 amendment to the Rule retained the summary judgment standard of former subdivision (c), but replaced "issue" with "dispute" because the term "better reflects the focus of a summary judgment determination."  Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.  Thus, the terms are interchangeable in this context.

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact . . . ."), nor is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

Where, as here, the intent of an individual is in dispute, "the issue of intent underlying an equal protection claim generally belongs to the trier of fact." *A.B.C. Home Furnishings v. Town of E. Hampton*, 964 F. Supp. 697, 703 (E.D.N.Y. 1997) (citing *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1216–17 (2d Cir. 1987); *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) ("[I]ntent is always a subjective matter of inference and thus rarely amenable to summary judgment." (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980))); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated."). However, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

Notably, "a district court is free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment," *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), although the court "has *discretion* to consider a belatedly-raised argument," *id.* (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)).

## IV. EQUAL PROTECTION CLAIMS

The Fourteenth Amendment states in pertinent part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1. According to the Second Circuit Court of Appeals, "there are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause."  *Pyke v. Cuomo*, 258, F.3d 107, 109 (2d Cir. 2001) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999)).

> A plaintiff could point to a law or policy that expressly classifies persons on the basis of race.  Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner.  A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

*Id.* (quoting *Brown v. City of Oneonta*, 221 F.3d at 337).  Additionally, a plaintiff may claim selective prosecution, *United States v. Armstrong*, 517 U.S. 456, 465 (1996), or selective enforcement of the law, *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980); *see also*

*Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000), based upon his or her membership

in a particular class, compared with others similarly situated, *Brown v. City of Oneonta*, 221 F.3d

at 337.  Finally, a plaintiff may seek to prove discrimination under the "class of one" analysis,

asserting he or she was "intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment" without otherwise claiming membership

in a particular class or group.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000);

*accord Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005); *Doe v. Village of Mamaroneck*,

462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006).

As previously noted, Plaintiffs' amended complaint stated a claim under the Equal

Protection Clause on two alternative theories of liability, as allowed by, *inter alia*, *Rodriguez v.

Clinton*, 357 F. App'x 355, 357 (2d Cir. 2009): discriminatory application of a facially neutral

law under *Pyke*, 258 F.3d at 337–38, and selective enforcement of the law compared to similarly

situated comparators, as expressed in *LeClair*, 627 F.2d at 609–10.  Defendants' moving papers

are wholly devoid of references to Plaintiffs' *Pyke* claim and fail to address why the evidence

demonstrates no genuine dispute of material fact regarding Tessmer's alleged discriminatory

application of facially neutral laws.  Instead, Defendants focus completely on Plaintiffs' claim of

selective enforcement of the zoning laws.  Defendants' only reference to the *Pyke* claim is found

in their reply brief, wherein they urge that *Pyke* is inapplicable and insist that Plaintiffs were not

singled out alone, citing selective enforcement and "class of one" case law.  The Court notes,

however, that there is sufficient material in Defendants' papers to adequately assess a challenge

to both theories of liability.  *See Am. Hotel Int'l Grp. , Inc. v. OneBeacon Ins. Co.*, 611 F. Supp.

2d 373, 375 (S.D.N.Y. 2009).

11

### A. *Pyke* Claim: Discriminatory Application of Facially Neutral Laws

According to *Pyke v. Cuomo*, "a plaintiff who . . . alleges that a facially neutral law or policy has been applied in an intentionally discriminatory . . . manner . . . is not obligated to show a better treated, similarly situated group of individuals of a different [group] in order to establish a claim of denial of equal protection."  258 F.3d at 338.[3]  Instead, such a plaintiff must demonstrate that that the application of the law was motivated by discrimination.  *Id.*  In so doing, a plaintiff *need not* prove "that a government decisionmaker was motivated solely, primarily, or even predominantly by" his or her race or national origin. *United States v. City of Yonkers*, 96 F.3d 600, 611 (2d Cir. 1996).  Once a plaintiff shows that a decision was so motivated "at least in part," a defendant must show that the same result would have been reached even without the impermissible consideration.  *Id.* at 612 (internal quotation marks and citations omitted); *accord Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 546 (S.D.N.Y. 2006).  "If the defendant comes forward with no such proof or if the trier of fact is unpersuaded that

---

[3] Defendants maintain in their short *Pyke* argument that Plaintiffs must show they were singled out alone for enforcement of the laws, and otherwise that Plaintiffs must identify similarly situated individuals when zoning laws are involved.  They are incorrect.  *Cf. Nemeth v. Village of Hancock*, No. 3:10-CV-1161, 2011 WL 56063, at *5 (N.D.N.Y. Jan. 7, 2011) (stating, where plaintiffs *did not* allege discriminatory treatment due to an impermissible classification, that "in a zoning context, a plaintiff must show treatment different from other similarly situated individuals.  This is true whether Plaintiffs proceed on a 'selective enforcement' or 'class of one' theory." (internal quotation marks and citations omitted)).  Defendants cite in their moving papers only selective enforcement and "class of one" cases, most of which are relevant to the distinct selective enforcement claim but not to the *Pyke* claim. *See, e.g.*, *Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 57 (2d Cir. 2010) ("class of one"); *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 68 (2d Cir. 1999) (selective enforcement); *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16–17 (2d Cir. 1999) (selective enforcement); *Zahra v. Town of Southold*, 48 F.3d 674, 678, 683 (2d Cir. 1995) (selective enforcement); *Nemeth*, 2011 WL 56063, at *5 (selective enforcement and "class of one"); *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009) (selective enforcement); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 357 (S.D.N.Y. 2009) (selective enforcement); *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 233 (E.D.N.Y. 2009) (selective enforcement); *Tshaka v. Benepe*, No. 02-CV-5580 (ILG), 2003 WL 21243017 (E.D.N.Y. Apr. 9, 2003) (analyzing motion to dismiss under selective enforcement where complaint devoid of factual allegations of direct discriminatory animus); *Gottlieb v. Village of Irvington*, 69 F. Supp. 2d 553, 559 (S.D.N.Y. 1999) (selective enforcement).

[consideration of the plaintiff's class membership] did not contribute to the outcome of the decision, the equal protection claim is established." *City of Yonkers*, 96 F.3d at 612 (internal quotation marks and citation omitted).

Defendants here fail to meet their initial burden of demonstrating the lack of a genuine dispute of material fact and entitlement to judgment as a matter of law. Even if Defendants had met their burden, Plaintiffs have proffered sufficient evidence for a trier of fact to conclude that Tessmer was motivated in part by Savino's national origin when enforcing the zoning code and that the same result would not have been reached despite the discriminatory animus.

### 1. Discriminatory Motivation

Defendants contend that Plaintiffs' attempt to establish the impermissible consideration of Savino's national origin through one comment is insufficient, considering it was not made contemporaneously with the issuance of the four informations of which Plaintiffs now complain. In support of the instant motion, Defendants provide Tessmer's affidavit categorically denying having made the derogatory comment, while Plaintiffs point to the deposition testimony of Savino and non-party Benfari, both of whom were present when the alleged comment was made. In asserting there is no triable issue of material fact, Defendants argue that Benfari is a close friend of Savino and is therefore unreliable. Defendants' assertion in essence asks the Court to make a credibility determination, which is improper on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Defendants also argue that Savino did not mention the purported comment to his wife or in the Town Court proceeding, apparently implying that Savino subsequently fabricated it in order to file the instant action. However, this again goes to the issue of credibility. Tessmer's alleged comment is material to whether Defendants violated Plaintiffs' right to equal protection. Thus, a trier of fact should decide

13

whether Tessmer in fact said it.

Next, Defendants suggest that, even if Tessmer made the derogatory comment, because he made it about a year and a half after he issued the informations which led to Savino, Inc.'s prosecution in the Town Court, and not contemporaneously therewith, the comment is not probative.  However, Plaintiffs proffered evidence that Tessmer allegedly made the comment contemporaneously with the issuance of a stop work order against Savino, Inc. while the Town Court prosecution was pending.  This action constitutes enforcement of the zoning code.  Thus, the derogatory comment is probative of Defendants' alleged discriminatory intent.  *See St. Louis v. N.Y.C. Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 230 (S.D.N.Y. 2010); *Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007).  Plaintiffs thus raise a genuine issue of material fact as to whether Tessmer was motivated by discriminatory animus toward Italians at that time and when Tessmer issued the informations.

Additionally, Defendants contend that Savino understood Tessmer to be joking, implying that the comment is not probative of Tessmer's intent.  Whether Savino thought Tessmer was joking is irrelevant, as the relevant inquiry is that of Tessmer's intent.  Savino's deposition testimony evinces that he initially thought Tessmer was joking because no one would seriously say such a thing, but then he believed otherwise.  Similarly, non-party Benfari testified that he never though Tessmer made the comment in jest.  Thus, this assertion is insufficient to demonstrate entitlement to judgment as a matter of law.

Defendants also assert that Tessmer could not or did not discriminate against Plaintiffs because Tessmer's wife of 43 years is of Italian heritage.  This argument lacks merit because "[t]he proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable."  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir.

14

1998).

Finally, Defendants assert that, even if Tessmer made the derogatory comment, mere racial slurs or epithets reflecting racial prejudice cannot in isolation form the basis of a claim under § 1983. *Brown v. Croce*, 967 F. Supp. 101, 104 (S.D.N.Y. 1997). This is true only when there is no claim or showing of injury. *Id.* (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)). In the instant action, Plaintiffs claim lost income as a result of having to cease towing and car sales, and damages for having to defend themselves against the informations which Tessmer issued. On the issue of damages, Defendants assert that Plaintiffs failed to suffer any economic loss. In support, Defendants rely on state and local quarterly tax filings of non-party Savino Towing, Inc. and the deposition testimony of Savino's wife as proof of no income. However, such evidence fails as a matter of law, as Defendants do not dispute that Plaintiffs incurred expenses in defending the Town Court proceeding or that Plaintiffs eventually removed the unregistered cars from the Property and ceased towing, car sales and storage, thus depriving Plaintiffs of income. Therefore, Defendants have not demonstrated the absence of a genuine issue of material fact, or that as a matter of law Tessmer did not consider Savino's national origin when applying the facially neutral zoning laws.

### 2. Same Result Without Discrimination

Defendants have also failed to demonstrate the absence of a genuine dispute of material fact concerning whether Tessmer would have decided to enforce the zoning code against Savino, Inc. even without considering Savino's national origin. Defendants assert that Savino, Inc. legally abandoned its pre-existing nonconforming uses of towing, car sales and storage when it sought the Site Plan approval in 1991, which purportedly limited the use of the Property to a convenience store, U-Haul rentals, and selling gasoline. Thus, according to Defendants, Tessmer

was merely enforcing the zoning code against a property owner who was in clear violation of the law.  Defendants, however, overlook the fact that Savino, Inc. asserted the pre-existing use defense in the Town Court proceeding and the Town Court found Savino, Inc. "not guilty" of the charges.  Although the Town Court failed to state its reasoning in its one-page decision, it does not follow that the Town Court did not make a finding that Savino, Inc. demonstrated the existence of pre-existing uses by a preponderance of the evidence.

Savino, Inc. never denied having vehicles for sale, unlicensed or unregistered vehicles, and a trailer on the Property.  The record reflects that the Town Court denied Savino, Inc.'s initial motion to dismiss the informations on the basis of Savino, Inc.'s asserted pre-existing use defense.  The Town Court held that the existence of a pre-existing use is largely fact-driven and thus appropriately raised at trial; the Town Court did not preclude the argument from consideration.  Subsequently, the Town Court denied Savino, Inc.'s motion to dismiss at the close of the Town's case on the basis of the pre-existing use defense, but explicitly noted that Savino, Inc. was allowed to proffer evidence to support its pre-existing use defense.  Defendants do not dispute that the existence of pre-existing uses would constitute a complete defense in the Town Court trial.  Tessmer testified that the Town Court rejected his testimony that Savino, Inc. abandoned the uses after filing the 1991 Site Plan.  Thus, it is logical to infer from the record of the Town Court proceeding that Savino, Inc. prevailed because of the pre-existing use defense.

Moreover, viewing the evidence in the light most favorable to Plaintiffs, Tessmer may have been well aware that the Property's uses of towing, vehicle sales, and vehicle storage were ongoing and pre-existing.  Tessmer's deposition testimony reflects that he had lived in the Town for 22 years prior to issuing the informations and passed by the Property numerous times per week.  Thus, it is reasonable to infer that he was aware of Plaintiffs' activities.  Accordingly, the

16

motion for summary judgment must be denied as to Plaintiffs' equal protection *Pyke* claim for discriminatory application of a facially neutral law.

### B. Selective Enforcement Claim

To prevail on a claim of selective enforcement of the law in violation of the Equal Protection Clause, a plaintiff must prove that (1) "compared to others similarly situated, [he or she] was selectively treated," and (2) "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)); *accord Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement." *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999). Since the analysis concerning the second element—the impermissible consideration of Savino's national origin—is identical to that discussed in the *Pyke* claim analysis, the Court finds genuine issues of material fact regarding this element. Thus, only the first element, selective treatment as compared to similarly situated comparators, requires further discussion.

Because Plaintiffs assert selective enforcement based on national origin, they must identify similarly situated property owners who are not of Savino's national origin. *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 518 F. Supp. 2d 692, 696 (S.D.N.Y. 2011) (citing *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008)). District courts in this circuit have noted that "[s]imilarly situated does not mean identical, but rather 'a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' to the extent that an 'objectively identifiable basis for comparability' exists." *Walker v. City of New York*, No.

17

05-CV-1283, 2010 WL 5186779, at *7 (E.D.N.Y. Dec. 15, 2010) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)), *quoted in Mosdos*, 518 F. Supp. 2d at 696.  In other words, Plaintiffs "must identify comparators whom a 'prudent person would think . . . [were] roughly equivalent.'"  *Abel v. Morabito*, No. 04 Civ. 07284 (PGG), 2009 WL 321007, at *5 (S.D.N.Y. Feb. 11, 2009) (quoting *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004)).[4]  Generally, whether people are similarly situated "is a factual issue that should be submitted to the jury," although summary judgment may be granted "where it is clear that no reasonable jury could find the similarly situated prong met."  *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

Plaintiffs identify two neighboring properties which they assert are similarly situated: Brady-Stannard, a Chevrolet-Cadillac franchise automobile dealership located adjacent to the Property, and Smith-Cairns, a Subaru franchise automobile dealership located diagonally across the street from the Property.  Neither comparator is owned by individuals of Savino's national origin.  Defendants contend that these comparators are not similarly situated because they purportedly have completely dissimilar uses than the Property.  Defendants base their assertion upon on the premise that Plaintiffs abandoned the car sales, storage, and towing uses in 1991 by seeking approval of other uses.  However, as discussed previously, there is a question of fact concerning whether Savino, Inc. abandoned the uses or continued them through 2008.  It is

---

[4] The standard for showing similarly situated comparators is often held to be more stringent for "class of one" claims than in selective enforcement claims.  *See Neilson v. D'Angelis*, 409 F.3d 100, 104–06 (2d Cir. 2005) (distinguishing standards for "class of one" and selective enforcement based on membership in specific protected classes, and holding that "[i]n order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high"); *see also Mosdos*, 518 F. Supp. 2d at 693–97 (discussing variation among district courts over the applicable standard and declining to apply the *Neilson* "class of one" formulation to a selective enforcement claim brought by a religious group complaining of municipal action to that blocked construction of a school and housing development).

noteworthy that Savino, Inc. and the two purported comparators are businesses owning commercial property that deal with automobiles.  Thus, a prudent person could find the two comparators to be roughly equivalent to Savino, Inc.  *Estate of Morris*, 297 F. Supp. 2d at 686. Although Defendants attempt to distinguish the two comparators by virtue of the methods in which they obtained the uses of selling and storing vehicles—Smith-Cairns via Town Board approval and Brady-Stannard via pre-existing nonconforming uses—this contention is of little consequence, as the comparators and Savino, Inc. shared the same uses.

In addition to demonstrating similarly situated comparators, Plaintiffs must demonstrate that they were treated differently from the comparators, as differential treatment is "the *sine qua non* of a *LeClair* selective enforcement violation."  *Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 555 (S.D.N.Y. 2006).  Such a demonstration often requires evidence of "the municipality's knowledge of the other, unenforced violations" committed by the comparators. *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009) (citing *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999)).

Concerning the issuance of informations for outside storage and sales of vehicles, Savino testified that Brady-Stannard expanded its uses by purchasing an additional plot of land in 1978 or 1979, but was never subjected to enforcement for this improper expansion.  Savino, Inc., however, was subjected to enforcement even though it had the same pre-existing uses.  Savino also testified that he told Tessmer Brady-Stannard was violating the zoning code in this regard at the time Tessmer issued one of the informations relating to vehicle storage.  However, Tessmer did not cite Brady-Stannard.  Defendants proffer two affidavits from town officials stating simply that Brady-Stannard never changed, altered, or expanded the use of its property and never enlarged or expanded its building, without addressing whether Brady-Stannard in fact purchased

19

the additional plot or whether such a purchase would affect the status of a pre-existing nonconforming use.  The Court notes the existence of a genuine issue of material fact concerning the expansion of use, as Savino's deposition testimony is sufficient to raise such an issue.  Fed. R. Civ. P. 56(c)(1)(A).  Thus, Defendants are unable to show that as a matter of law the Town lacked knowledge of an unenforced zoning violation by Brady-Stannard.  *Christian*, 649 F. Supp. 2d at 94.

With respect to vehicle sales and storage, the proffered evidence supports Plaintiffs' assertion that neither Savino, Inc. nor Smith-Cairns, a similarly situated comparator, violated the zoning code, yet Savino, Inc. was nonetheless subject to enforcement while Smith-Cairns was not.  (S.D.N.Y. 2006) (differential treatment is).  Thus, there is a dispute of fact as to whether Savino, Inc. was treated differently, *Doe*, 462 F. Supp. 2d at 555, and the requirement of showing knowledge of unenforced violations is inapplicable, *cf. Christian*, 649 F. Supp. 2d at 94.

Concerning Savino, Inc.'s purported impermissible placement of a trailer or storage container on the property, Plaintiffs contend that both Savino, Inc. and Brady-Stannard had trailers on their properties, yet only Savino, Inc. was issued an information.  Tessmer testified in his deposition that he gave Brady-Stannard various verbal warnings and sent one written courtesy warning, but issued no informations.  In comparison, Tessmer issued Savino, Inc. an information for its trailer without providing any verbal or written warnings.  Plaintiffs note that it took Brady-Stannard almost a year to remedy the condition.  Defendants attempt to justify the differential treatment by asserting that Brady-Stannard had asked for an extension of time to remedy the violation while Plaintiffs did not request an extension.  Additionally, Defendants assert that sending the courtesy warning was indicative of Tessmer's enforcement of the zoning code, just as he enforced the code against Savino, Inc.  They proffer evidence of 17 courtesy

warnings to non-party property owners, including Brady-Stannard, and informations issued to 15 property owners, six of whom also received courtesy warnings.  It is worth mentioning, though, that Savino, Inc.'s trailer did not fit the zoning code's definition and, thus, its storage on the Property was not deemed a violation.  This fact supports Plaintiffs' contention that they were targeted by Tessmer.  In sum, as there are genuine issues of material fact concerning the selectivity of Tessmer's enforcement of the zoning code, summary judgment must be denied on the selective enforcement claim.

## V. QUALIFIED IMMUNITY

Defendants contend that Tessmer is entitled to qualified immunity.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011); *see also Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982) ("Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Harlow*, 457 U.S. at 818–19.

It is within the Court's discretion to determine the order in which the two prongs are analyzed.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  As the Court has already found, based on the proffered evidence, that there are genuine issues of material fact concerning whether Tessmer intentionally violated the Equal Protection Clause of the Fourteenth Amendment, only the second prong must be considered.

21

A defendant enjoys qualified immunity if he can show that "either (a) [his] action did not violate clearly established law, or (b) it was objectively reasonable for [him] to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.2d 246, 250 (2d Cir. 2001) (internal quotation marks and citations omitted). "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013); *accord Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court must consider "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support[s] the existence of the right in question; and (3) whether under preexisting law a reasonable official would have understood that his or her acts were unlawful." *Burns v. Citarella*, 443 F. Supp. 2d 464, 470 (S.D.N.Y. 2006) (citing *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991)).

Here, Tessmer does not dispute that the right to equal protection from the intentionally discriminatory application of a facially neutral laws based on national origin and the right to equal protection from selective enforcement of the laws for the same reason are defined with reasonable specificity. Tessmer also does not dispute that precedent supports the existence of those rights. To be sure, the prohibition against the application of a neutral law because of someone's race or national origin was previously established, *see Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886), as was the prohibition against selective enforcement of a law for the same reasons, *see LeClair v. Saunders*, 627 F.2d 606, 610 (2d Cir. 1980). Thus, Tessmer asserts only that his actions, issuing the courtesy warning and informations after purportedly researching whether Savino, Inc.'s site plan allowed selling and storing vehicles on the Property, were objectively reasonable.

22

The proper standard in assessing the reasonableness of a government official's actions is whether those "actions were objectively reasonable *in light of the legal rules that were clearly established* at the time [they were] taken," *Burns*, 443 F. Supp. 2d at 469 (emphasis added) (citing *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003)); *see also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (personal liability "generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." (quoting *Anderson*, 483 U.S. at 639)); *Harlow*, 457 U.S. at 818 (discussing "[r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law"); *Zahra v. Town of Southfield*, 48 F.3d 674, 686 (2d Cir. 1995) (officials protected "from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard"), not merely whether the actions were objectively reasonable generally, *see Crawford-El v. Britton*, 523 U.S. 574, 593–94 (1998) ("The reasoning in *Harlow*, like its specific holding, does not justify a rule that places a thumb on the defendant's side of the scales when the merits of a claim that the defendant knowingly violated the law are being resolved.  And, *a fortiori*, the policy concerns underlying *Harlow* do not support [the dissent's] unprecedented proposal to immunize all officials whose conduct is 'objectively valid,' regardless of improper intent."); *Brennan v. City of White Plains*, 67 F. Supp. 2d 362, 376 (S.D.N.Y. 1999) (although qualified immunity may apply "to constitutional violations requiring a demonstration of subjective intent, it is not clear that the doctrine . . . allows a generalized 'reasonableness' defense to Section 1983 claims" (citing *Crawford-El*, 523 U.S. at 593–94)).

"Defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time."  *Rosen v. City of New York*, 667 F. Supp. 2d

355, 362 (S.D.N.Y. 2009) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997)).

Summary judgment is appropriate "[if] the defendant show[s] that no reasonable jury, viewing

the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's

actions were objectively unreasonable in light of clearly established law." *Deskovic v. City of

Peekskill*, 894 F. Supp. 2d 443, 451 (S.D.N.Y. 2012) (alterations in original) (quoting *O'Bert v.

Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)).  In other words, "[t]he objective reasonableness test is

satisfied if officials of reasonable competence could disagree on the legality of the defendants'

actions." *Burns*, 443 F. Supp. 2d at 471.  However, summary judgment is not appropriate

"where there are facts in dispute that are material to a determination of reasonableness." *Rosen*,

667 F. Supp. 2d at 362 (citing *Thomas v. Roach*, 165 F.3d 137, 143–45 (2d Cir. 1999)).

      Here, Defendants fail to mention the applicable legal standard, much less explain how

Tessmer's actions of issuing informations, viewed in light of the legal rules governing equal

protection, were objectively reasonable.  The Court notes the significant distinction between the

instant action and *Zahra v. Town of Southfield*, 48 F.3d 674 (2d Cir. 1995), which discussed

qualified immunity regarding a purported substantive due process property right in a previously-

issued building permit and the revocation thereof by town officials who understood that the

property owner was not in compliance with the plans approved by the building department.  As

previously discussed, a trier of fact could reasonably determine that Tessmer applied the zoning

laws against Savino, Inc. despite the pre-existing nonconforming uses on the Property because of

Savino's nationality.  Likewise, a trier of fact could reasonably conclude that Tessmer's actions

in enforcing the zoning code against Savino, Inc. were unreasonable in light of the

aforementioned clearly established law. *Cf. Deskovic*, 894 F. Supp. 2d at 451.  Furthermore, it is

unreasonable to believe that applying or enforcing a law based on someone's national origin does

not violate the Fourteenth Amendment, and no official of reasonable competence would disagree. *Burns*, 443 F. Supp. 2d at 471. Accordingly, the motion for summary judgment in favor of Tessmer based on qualified immunity must be denied.

## VI. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is DENIED. The Clerk of Court is respectfully requested to terminate this motion (Doc. 30).

Dated: October 21, 2013
      White Plains, New York

SO ORDERED:

10/21/13

NELSON S. ROMÁN
United States District Judge